## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

KEVIN DEATRICK,                 )
)
             Plaintiff,      )      CIVIL ACTION
)
v.                        )      No. 23-2218-KHV
)
MARTIN O'MALLEY,        )
Commissioner of Social Security,  )
)
             Defendant.    )
_____)

## MEMORANDUM AND ORDER

Plaintiff appeals the final decision of the Commissioner of the Social Security Administration to deny disability and disability insurance benefits under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 401–34.[1]  For reasons stated below, the Court affirms the decision of the Commissioner.

### Procedural Background

On August 21, 2020, plaintiff filed his disability and disability insurance applications with the Social Security Administration.  He claimed a disability onset date of July 16, 2020.  Plaintiff alleges disability because of interstitial cystitis, which causes urinary urgency and frequency.  Specifically, plaintiff alleges that this condition causes him to take bathroom breaks one to two times an hour.   Plaintiff further alleges disability because of lumbar disc disorder with radiculopathy.  Initially and upon reconsideration, the agency denied plaintiff's applications.  On October 14, 2022, after a telephone hearing on September 26, 2022 at which plaintiff and a

---

[1]      On December 20, 2023, Martin O'Malley was appointed Commissioner of the Social Security Administration.  Pursuant to Rule 25(d), Fed. R. Civ. P., Martin O'Malley is substituted for former Acting Commissioner Kilolo Kijakazi as defendant in this suit.

vocational expert testified, an administrative law judge ("ALJ") denied his claim.  The ALJ found that plaintiff was not disabled from July 16, 2020 through the date of the ALJ's decision.  The Appeals Council denied plaintiff's request for review, making the ALJ decision the final decision reviewable by this Court.  See 42 U.S.C. § 405(g).  On May 16, 2023, plaintiff filed his complaint, and on October 16, 2023, he filed his opening brief, seeking review of the ALJ decision.  See Complaint (Doc. #1); Plaintiff's Initial Social Security Brief (Doc. #11).

## Factual Background

The following is a brief summary of the factual record.

Plaintiff is 47 years old.  He has a high school degree and has completed two years of culinary technical school.  Tr. 34.  From 1998 to 2020, plaintiff worked as a utility worker for Kansas Personnel Services.  Tr. 35, 221.  On July 16, 2020, plaintiff stopped working full time when his employer laid off multiple people.  Tr. 35–36.  On July 16, 2022, he began working as a shopper at Walmart for 10 to 20 hours per week.  Tr. 36.  His shifts at Walmart lasted for four to five hours at a time and his work included locating and taking merchandise off the shelves and arranging it in bags for curbside delivery customers.  Tr. 36–38.  He earned $14 an hour at Walmart.  Tr. 37.

Plaintiff testified that his interstitial cystitis causes him to take one to two bathroom breaks an hour, each requiring an average of seven minutes per break.  Tr. 40.  Plaintiff further testified that because of his frequent bathroom breaks, Walmart told him that he took too much time to complete his tasks.  Tr. 41.

## I.   Plaintiff's Medical Evidence

### A.   Chu-Chi Chen, M.D.

From July of 2019 to February of 2021, Dr. Chu-Chi Chen, M.D., a urologist, examined

plaintiff several times.  On July 11, 2019, plaintiff had a cystoscopy and bladder biopsy and, on July 26, 2019, Dr. Chen conducted a follow-up appointment with him regarding the biopsy.  Tr. 344–45.  The biopsy results showed that plaintiff had "mild" chronic cystisis.  Tr. 346.  Plaintiff reported to Dr. Chen that his bladder symptoms had improved since the procedure.  Tr. 345.  On January 24, 2020, Dr. Chen examined plaintiff after he began taking a new medication for his bladder symptoms, and noted that plaintiff's symptoms "were relieved."  Tr. 343.  On August 5, 2020, Dr. Chen examined plaintiff and determined that he only occasionally experienced bladder urgency and frequency and prescribed him new medication for these symptoms.  Tr. 341 (plaintiff has "urgency and frequency at times").

In a letter dated January 5, 2021 addressed to "Human Resources Officer," Dr. Chen stated: "Due to a medical condition [plaintiff] may need to urinate more than normal."  Tr. 393.  At his next appointment with Dr. Chen on February 2, 2021, Dr. Chen noted that plaintiff had bladder urgency and frequency and prescribed him new medication.  Tr. 395–96.

B.  Loren J. Smith, M.D.

In February of 2021, Dr. Chen referred plaintiff to Dr. Smith as a new urologist.  Tr. 396.  On December 6, 2021, plaintiff saw Dr. Smith for an examination of his bladder function.  Tr. 484.  Dr. Smith concluded that it was "unclear" what plaintiff's underlying bladder problem was and "he really does not have any neurologic condition otherwise."  Tr. 484.  Dr. Smith determined that it would be best to offer plaintiff urodynamic testing to better understand plaintiff's "actual functional capacity" and "whether or not he has true overactivity."  Tr. 484.  Dr. Smith additionally noted: "If there is question or if he really is asking in the future about disability relative to his bladder function I will probably send him for subspecialty evaluation to ensure that [we're] not missing anything."  Tr. 484.

After plaintiff began taking a new medication for his bladder issues, he saw Dr. Smith again on May 26, 2022 for a follow-up appointment. Tr. 505. Plaintiff told Dr. Smith that he had "pretty significant improvement in his urge and frequency control but still has occasional wetting episodes affiliated or associated with [the] need to go to the bathroom particularly at night," but that he had "good control without other symptoms" during the day. Tr. 505. In his treatment plan, Dr. Smith wrote that he had a long conversation with plaintiff about "why his diagnosis really is overactive bladder and urge and frequency rather than incomplete emptying or interstitial cystitis." Tr. 508.

C. Samantha Keating, APRN

On August 6, 2021, plaintiff saw Samantha Keating, a nurse practitioner in Stormont Vail Health's Cotton O'Neil Urology Clinic, to follow up on his reported symptoms of urinary frequency and urgency. Tr. 443. Keating noted in her progress note that plaintiff has a "long history of urinary urgency and frequency and has been treated for interstitial cystitis by Dr. Chen for a few years with Elavil and Cialis." Tr. 443. On October 5, 2021, plaintiff saw Keating again to follow up on his urinary frequency. Tr. 473. Plaintiff told Keating that he had "done well since his last visit" and that his new medication resulted in "some improvement of his urinary frequency." Tr. 473.

D. Carrie L. Werst, NP

On August 22, 2022, Carrie L. Werst, a nurse practitioner, examined plaintiff. Despite plaintiff's report that he has "significant issues with urinary frequency," Werst noted that plaintiff is "stable" on his medications for his bladder. Tr. 510. Based on this, Werst did not refer him back to urology. Tr. 511, 512.

E. State Agency Medical Consultants

The ALJ received reports by Carol A. Eades, M.D. and Shabnam Rehman, M.D., state agency medical consultants.[2]  Dr. Eades evaluated plaintiff's medical condition at the initial level. Tr. 53–75.  On December 6, 2021, Dr. Eades found that plaintiff's limitations were "partially credible as they are not totally consistent with the objective medical evidence on [] file."  Tr. 72. She concluded that plaintiff's condition resulted in some limitations in his ability to perform work-related activities but that it was not severe enough to keep him from working.  Tr. 75.

On April 13, 2022, Dr. Rehman evaluated plaintiff's medical condition at the reconsideration level.  Tr. 77–95.  Dr. Rehman determined that the objective medical evidence did not substantiate plaintiff's statements about the intensity, persistence and functionally limiting effects of his symptoms.  Tr. 88.  Dr. Rehman also found that plaintiff's statements regarding his symptoms were only partially consistent with the total medical and non-medical evidence on file. Tr. 88.  Dr. Rehman concluded that plaintiff could continue working and could adjust to "other less demanding occupations."  Tr. 94.

## II.    Vocational Expert Opinion[3]

At the hearing before the ALJ, a vocational expert testified.  The vocational expert relied

---

[2]      The Social Security Administration defines a "state agency medical consultant" as "a member of a team that makes disability determinations in a State agency (see § 404.1615), or who is a member of a team that makes disability determinations for us when we make disability determinations ourselves.  The medical consultant completes the medical portion of the case review and any applicable residual functional capacity assessment about all physical impairment(s) in a claim."  See Social Security Administration, https://www.ssa.gov/OP_Home/cfr20/404/404-1616.htm (last visited Jan. 18, 2024).

[3]      A vocational expert provides evidence in Social Security disability adjudications by answering questions posed by the ALJ and the claimant or the claimant's representative based on hypothetical findings of age, education, work experience and the residual functioning capacity. See Social Security Administration, https://www.ssa.gov/appeals/ve.html (last visited Jan. 18, 2024).  A vocational expert cannot comment on medical matters, such as whether he or she believes that the medical evidence indicates a certain diagnosis, disability determination or functional limitation.  Id.

on the Dictionary of Occupational Titles ("DOT") to classify plaintiff's previous experience as a utility worker as the work of a "bindery worker" (DOT 653.685-010).[4]  The ALJ posed two hypothetical individuals to the vocational expert.

First, the ALJ asked about a hypothetical individual who could perform light work.  Tr. 49. This individual could lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently; could stand and/or walk off and on for six hours during an eight-hour work day with standard breaks; could sit for six hours during an eight-hour work day with standard breaks; could occasionally climb ladders, ropes or scaffolds; and could frequently climb ramps or stairs.  Tr. 49. This individual could not, however, tolerate concentrated use of vibrating power.  Tr. 49.  Because this person requires frequent bathroom breaks, they will be off task for up to five per cent of the work day.  Tr. 49–50.  The vocational expert testified that this hypothetical person could perform plaintiff's past job as a bindery worker, but could not perform it as he performed it in the past.  Tr. 50.  The vocational expert further testified that this hypothetical person could perform other unskilled work in the national economy, including the following positions: inserting machine operator (DOT 208.685-018), electronics sub-assembler (DOT 729.684-054) or small parts assembler (DOT 706.684-022).  Tr. 50.

Second, the ALJ asked about a hypothetical individual with the same capabilities and limitations as the individual in the first hypothetical who, because of bathroom breaks, is off task for up to 15 per cent of the work day.  Tr. 51.  The vocational expert testified that this hypothetical individual could not perform plaintiff's past work or any other full-time competitive position in

---

[4]    Dictionary of Occupational Titles Volume II, 709, 1011 (4th ed. 1991).  The DOT is used in Social Security disability adjudications as the primary source of occupational information to determine whether an individual can perform a position.  See U.S. Department of Labor, https://www.dol.gov/agencies/oalj/topics/libraries/LIBDOT (last visited Jan. 18, 2024).

the national economy.  Tr. 51.

### III.    ALJ Findings

The ALJ denied benefits at step four because he concluded that plaintiff was capable of performing his past relevant work and, alternatively, at step five because he could perform multiple other jobs existing in significant numbers in the national economy.  In his order on October 14, 2022, the ALJ made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.

2.  The claimant has not engaged in substantial gainful activity since July 16, 2020, the alleged onset date.

3.  The claimant has the following severe impairments: mild interstitial cystitis, lumbar disc disorder with radiculopathy.

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.  The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except: He can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; can stand and/or walk, off and on, for 6 hours during an 8-hour workday with standard breaks; can sit for 6 hours during an 8-hour workday with standard breaks; can occasionally climb ladders, ropes or scaffolds; can frequently climb ramps or stairs; cannot tolerate concentrated use of vibrating power tools; will be off-task for up to 5 percent of the workday due to bathroom breaks.

6.  The claimant is capable of performing past relevant work as a Bindery Worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.  The claimant has not been under a disability, as defined in the Social Security Act, from July 16, 2020, through the date of this decision.

Tr. at 16–22 (citations omitted).

In addition, the ALJ made the following finding regarding plaintiff's credibility:

After careful consideration of the evidence, the undersigned finds that the

claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

Tr. 19.

## Standard Of Review

The Court must determine whether the Commissioner's decision is free from legal error and supported by substantial evidence.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. (quoting Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)).  It requires "more than a scintilla, but less than a preponderance."  Id. (quoting Lax, 489 F.3d at 1084).  Evidence is not substantial if it is "overwhelmed by other evidence in the record or constitutes mere conclusion."  Grogan v. Barnhart, 399 F.3d 1257, 1261–62 (10th Cir. 2005).  To determine if the decision is supported by substantial evidence, the Court will not reweigh the evidence or retry the case, but it will examine the record as a whole, including anything that may undercut or detract from the Commissioner's findings.  Flaherty v. Astrue, 515 F.3d 1067, 1070 (10th Cir. 2007).

## Analysis

Plaintiff bears the burden of proving disability under the SSA.  See Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  The SSA defines "disability" as the inability to engage in any substantial gainful activity for at least 12 months due to a medically determinable impairment.  See 42 U.S.C. § 423(d)(1)(A).  To determine whether a claimant is under a disability, the Commissioner applies a five-step sequential evaluation: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of

impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) whether the impairment prevents the claimant from continuing his past relevant work; and (5) whether the impairment prevents the claimant from doing any kind of work.  See 20 C.F.R. §§ 404.1520, 416.920.  If a claimant satisfies steps one, two and three, he will automatically be found disabled; if a claimant satisfies steps one and two, but not three, he must satisfy step four. If step four is satisfied, the burden shifts to the Commissioner to establish that the claimant is capable of performing work in the national economy.  See Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988).

Here, the ALJ denied benefits at step four because he concluded that plaintiff is capable of performing his past relevant work and, alternatively, at step five because he can perform multiple other jobs existing in significant numbers in the national economy.  Tr. 21–22; see also Tr. 51 (vocational expert testified plaintiff could perform his past work as generally performed).

Plaintiff argues that the ALJ's residual functional capacity ("RFC") determination is not supported by substantial evidence.  Specifically, plaintiff argues that the ALJ erred in his step four analysis by concluding that plaintiff will be off task for up to five per cent of the work day due to bathroom breaks, rather than concluding that plaintiff requires approximately two bathroom breaks an hour, as plaintiff testified.[5]  The Court analyzes plaintiff's arguments within the following subpoints: whether the ALJ erred in (1) his assessment of the medical opinions regarding plaintiff's bladder frequency symptoms; (2) his assessment of plaintiff's testimony regarding his bladder frequency symptoms; and (3) his RFC conclusion that plaintiff would be off task for five per cent

_____

[5]     Although plaintiff alleges other impairments, including lumbar disc disorder with radiculopathy, plaintiff solely argues that the ALJ erred in his determinations regarding plaintiff's interstitial cystitis and related bladder symptoms.  See Plaintiff's Brief (Doc. # 11) at 3.  Thus, the Court focuses exclusively on the ALJ's findings with respect to that impairment.

of the work day.

**I.**     **The ALJ Did Not Err In His Analysis Of The Medical Opinions Regarding Defendant's Bladder Frequency Symptoms**

Plaintiff argues that the ALJ erred in concluding that plaintiff would be off task for five per cent of the work day because he disregarded portions of the medical record.  In support of his claim, plaintiff cites only one notation in the medical record.  Specifically, plaintiff argues that the ALJ disregarded Werst's note in August of 2022 that plaintiff "[h]as neurogenic bladder disorder, interstitial cystitis" and "has significant issues with urinary frequency in spite of medications he takes for it."  Plaintiff's Brief (Doc. #11) at 12.  The Commissioner notes that the ALJ did not ignore evidence of plaintiff's bladder symptoms because (1) he cited plaintiff's full urology records, including his most recent treatment record which noted that plaintiff has good daytime control of his bladder and (2) the ALJ did consider and cite Werst's report.  See Commissioner's Brief (Doc. #15) filed December 14, 2023 at 11–12.

In his decision, the ALJ cited the report in which Werst concluded that plaintiff's bladder condition is "stable" so long as he takes his medication.  See Tr. 19–20 (citing Tr. 511 ("For now [plaintiff] is stable on his medications for his bladder.")).  The ALJ also considered medical evidence from plaintiff's urologists dating back to 2019, including (1) evidence from August of 2020 that plaintiff experiences urinary urgency and frequency "at times," (2) a note from January of 2021 in which plaintiff's urologist stated, without providing a specific frequency, that plaintiff "may need to urinate more often than normal," (3) assessment notes from October of 2021 in which plaintiff's urologist states that plaintiff "reports that he has noticed some improvement of his urinary frequency" and (4) notes from May of 2022 in which plaintiff's urologist reported that after starting a new medication, plaintiff experienced "pretty significant improvement in his urge and frequency control" and had "good control without other symptoms" during the day.  See Tr.

19–20 (citing Tr. 340, 393, 473, 505).  Based on this evidence, the ALJ concluded that he had adequately considered plaintiff's bladder condition by "limiting [plaintiff] to light work with standard breaks and allowance of 5 percent off-task for bathroom breaks."  Tr. 20.

The ALJ must assess RFC based on all relevant evidence in the record, including information about individual symptoms and any "medical source statements," i.e., opinions by medical sources regarding what plaintiff can do despite his or her impairments.  Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2, 7 (July 2, 1996).  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why he did not adopt the opinion. Id.  In making this decision, the ALJ must consider all evidence and discuss the evidence supporting his decision and the uncontroverted evidence on which he chooses not to rely.  Clifton v. Chater, 79 F.3d 1007, 1009–10 (10th Cir. 1996).

In determining the RFC, the ALJ may properly find that the RFC fits "between" two medical opinions without fully embracing either one.  Smith v. Colvin, 821 F.3d 1264, 1268 (10th Cir. 2016).  Here, the ALJ did just that.  He found more significant limitations than the urologist of plaintiff's that plaintiff had good bladder control during the day, but less significant limitations than Werst's assessment some three months later.  The ALJ supported his finding with plaintiff's medical record, plaintiff's testimony regarding his symptoms and daily activities and the reports of the state agency medical consultants.  Tr. 19–22 (citing Tr. 340 (urologist note from August of 2020 that plaintiff experiences bladder urgency and frequency "at times"); Tr. 446 (urologist note from August of 2021 that plaintiff "has done well" since last visit); Tr. 473, 476 (urologist note from October of 2021 showing plaintiff's bladder frequency symptoms continue to improve); Tr. 505 (urologist note from May of 2022 that plaintiff showed "significant improvement in his urge and frequency control" and has "good control" during the day); Tr. 511 (primary care physician

note that plaintiff reported his bladder condition was "stable"); Tr. 45–48 (plaintiff's testimony

regarding his daily activities); Tr. 65–75, 85–94 (state agency medical consultant findings that

plaintiff's bladder symptoms are well controlled with medication)).  Accordingly, the Court finds

that substantial evidence supports the ALJ's finding that plaintiff would be off task for five per

cent of the work day.

## II.     The ALJ Did Not Err In His Assessment Of Plaintiff's Testimony Regarding His Bladder Frequency Symptoms

Plaintiff argues that the ALJ erred by (1) concluding that because of his bathroom breaks,

plaintiff would be off task for up to five per cent of the work day rather than concluding that

plaintiff would be off task approximately two times an hour,[6] as plaintiff testified at the hearing

and (2) including the five per cent off-task limit in the hypothetical questions that he posed to the

vocational expert at the hearing instead of the two bathroom breaks per hour limit.  See Plaintiff's

Brief (Doc. #11) at 2.

The Commissioner argues that the ALJ did not err in concluding that plaintiff will be off

task for up to five per cent of the work day because (1) the ALJ is not required to accept plaintiff's

testimony regarding his bladder symptoms and in fact must weigh plaintiff's reported symptoms

in the context of the entire record and (2) the ALJ supported with substantial evidence his

conclusion that plaintiff's bladder symptoms were less severe than he alleged.  See

Commissioner's Brief (Doc. #15) at 6–12.  The Commissioner further argues that because the ALJ

ultimately included the five per cent off-task limitation in his RFC, he did not err in including it in

---

[6]     At the hearing, plaintiff testified that he takes two bathroom breaks "at least once or twice an hour" and that each break takes approximately seven minutes.  Tr. 38, 40, 43.  When the ALJ asked plaintiff how many bathroom breaks Walmart allows its other employees, plaintiff testified: "I don't know what they allow for other normal employees.  I haven't ever inquired with that."  Tr. 38.

the hypothetical questions that he posed to the vocational expert.  Id. at 7.

Based on his review of plaintiff's testimony and the medical evidence, the ALJ found that limiting plaintiff's RFC "to light work with standard breaks and allowance of 5 percent off-task for bathroom breaks" adequately accommodated his mild interstitial cystitis.[7]  Tr. 20.  The ALJ further found that for the reasons explained in his decision, plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  Tr. 19.

"Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence.  However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  Cowan v. Astrue, 552 F.3d 1182, 1190–91 (10th Cir. 2008).  So long as the ALJ "sets forth the specific evidence he relies on in evaluating the claimant's credibility, he need not make a formalistic factor-by-factor recitation of the evidence."  Keyes-Zachary v. Astrue, 695 F.3d 1156, 1167 (10th Cir. 2012) (citation and internal quotation marks omitted).

Applying these principles, the Court concludes that substantial evidence supports the ALJ's finding that plaintiff's statements about the intensity, persistence and limiting effects of his bladder symptoms—specifically, the frequency in which he requires bathroom breaks—are not consistent with the record as a whole.  The ALJ's decision shows that he reviewed the record thoroughly,

---

[7]      The ALJ also based his RFC findings on (1) plaintiff's report of his daily activities, including that he "works at Walmart up to 20 hours per week, takes care of pets, is independent in personal care, prepares meals, mows the grass, vacuums the floor, does minor household repairs, drives a car, shops in stores, manages his finances, uses the internet, and visits friends and family" and (2) the reports of two state agency medical consultants, both of which concluded that plaintiff "can carry out light work with some additional environmental limitations."  Tr. 20.

including records of plaintiff's cystoscopy and bladder biopsy from before the alleged onset date to the plaintiff's most recent urology exams (May of 2022) and primary care visits (August of 2022).  Tr. 19–20.  Because they are supported by substantial evidence, the Court finds no error in the ALJ's credibility determinations and assessment of plaintiff's allegations.

### III.    The ALJ Did Not Err In His Conclusions That Plaintiff Would Be Off Task For Five Per Cent Of The Work Day

Plaintiff argues that the ALJ's RFC analysis "reveals critical omissions" because the ALJ did not define precisely how many bathroom breaks plaintiff requires or how long each break must take.  Plaintiff's Brief (Doc. #11) at 11.  The Commissioner argues that the ALJ did not err in reaching his RFC conclusion because he considered the entire record, including the efficacy of plaintiff's medical treatment and the fact that he has engaged in part-time work since his alleged onset date, and gave valid reasons for why he could not fully credit plaintiff's testimony that he takes one to two bathroom breaks an hour.  Commissioner's Brief (Doc. #15) at 10–11.

The RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" meaning "8 hours a day, for 5 days a week, or an equivalent work schedule."  SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).  The RFC assessment is an administrative determination, not a medical one.  McDonald v. Astrue, 492 F. App'x 875, 885 (10th Cir. 2012) (citing SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996)).  The ALJ should base the RFC determination on "all of the evidence in the record, not only the medical evidence[.]"  Dixon v. Apfel, No. 98-5167, 1999 WL 651389, at *2 (10th Cir. Aug. 26, 1999).  The ALJ's assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence."  SSR 96-8p, 1996 WL 374184, at *7.  The ALJ need not discuss every piece of evidence as long as the findings demonstrate the ALJ considered the whole record.  Clifton, 79 F.3d at 1009–10.

Here, the ALJ determined that plaintiff has the RFC to perform light work, except he can "lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; can stand and/or walk, off and on, for 6 hours during an 8-hour work day with standard breaks; can sit for 6 hours during an 8-hour work day with standard breaks; can occasionally climb ladders, ropes or scaffolds; can frequently climb ramps or stairs; cannot tolerate concentrated use of vibrating power tools; will be off-task for up to 5 percent of the work day due to bathroom breaks."[8]  Tr. 18.  The ALJ provided a narrative discussion describing how the objective medical evidence, the findings of the state agency medical consultants and plaintiff's own testimony, including his description of his daily activities, supported his RFC conclusion, including his decision to include an off-task percentage in the RFC as opposed to a set number of required bathroom breaks.[9]  Although the ALJ did not specifically state how he reached his conclusion that plaintiff could perform light work so long as he was allowed to be off task for five per cent of the work day, the ALJ explained that the overall record "show[ed] that the claimant's mild bladder condition causing urinary frequency is well-controlled with medication."  Tr. 20.  Thus, he concluded that the evidence supported an RFC which allowed five per cent off-task time in addition to plaintiff's regularly allowed bathroom breaks.  Tr. 20–21.

The Tenth Circuit does not require that the record contain "specific, affirmative, medical evidence . . . as to each requirement of an exertional work level" before the ALJ can determine

---

[8]     As defined by the regulations, "light work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "a good deal of walking or standing."  20 C.F.R. § 404.1567.

[9]     The ALJ explained that in reaching this finding, he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence, and other evidence, based on the requirements of 20 CFR 404.1529, and SSR 16-3p."  Tr. 18.  The ALJ also "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c."  Tr. 18.

RFC within that work category, the Court finds that, considering the record as a whole, the ALJ did not err in finding that plaintiff will be off task for up to five per cent of the work day due to bathroom breaks and that plaintiff was capable of performing his past relevant work and, alternatively, that  he could perform multiple other jobs existing in significant numbers in the national economy.  Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004).

**IT IS THEREFORE ORDERED** that pursuant to the fourth sentence of 42 U.S.C. § 405(g), the Judgment of the Commissioner is **AFFIRMED.**

Dated this 6th day of February, 2024 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge